OPINION
{¶ 1} Appellant Julie Miller, the natural mother of Brittany, born January 7, 1990, Alicia, born June 10, 1991, and Casey, born August 18, 1992, appeals a judgment of the Court of Common Pleas, Juvenile Division, of Stark County, Ohio, which terminated her parental rights in the minor children and awarded permanent custody to the Stark County Department of Job and Family Services. Appellant assigns a single error to the trial court:
 {¶ 2} "Because the manifest weight of the evidence did not warrant a finding in favor of the motion for permanent custody, the trial court's decision should be overturned."
 {¶ 3} R.C. 2151.414(B)(1) provides that a court may grant a motion for permanent custody of a child only if it determines at a hearing, by clear and convincing evidence, that it is in the best interest of the child. Appellant argues the evidence adduced at trial did not substantiate the court's finding by clear and convincing evidence that terminating all of appellant's parental rights was in the best interest of the children. Appellant argues because of the bond between her and the children, it was in the best interest of the children to remain in the temporary custody of JFS and to permit appellant further time to work on reunifying her family.
 {¶ 4} Appellee points out a judgment which is supported by competent and credible evidence going to all the essential elements of the case must not be reversed by a reviewing court as being against the manifest weight of the evidence, C.E. Morris Company v. FoleyConstruction (1978), 54 Ohio St.2d 279. The trial court has discretion to evaluate the credibility of witnesses, and an appellate court may not substitute its judgment for that of the finder of fact, see State v.Awan (1986), 22 Ohio St.3d 121. This court's role is to review the entire record, and determine whether in solving any conflicts in the evidence, the factfinder clearly lost its way, see State v. Thompkins (1997),78 Ohio St.3d 380. We may reverse a judgment as against the manifest weight of the evidence only in the most extraordinary cases, Id.
 {¶ 5} The Code sets forth various reasons a court may find the child cannot or should not be placed with a parent. Those reasons are:
 {¶ 6} "(1) The parent has repeatedly failed to remedy the condition causing the child to be placed outside of the home [R.C.2151.414(E)(1)];
 {¶ 7} (2) The severe and chronic mental illness, emotional illness, or chemical dependency of the parent makes the parent unable to provide an adequate home for the child at the present time and the foreseeable future, [R.C. 2151.414(E)(2)];
 {¶ 8} (3) The parent has committed an action showing an unwillingness to provide an adequate permanent home for the child [R.C.2151.414(E)(4)];
 {¶ 9} (4) The parent is unwilling to provide food, clothing, shelter and other basic necessities for the child, or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect [R.C. 2151.414(E)(14)]."
 {¶ 10} R.C. 2151.414(D) sets forth the factors a court should consider when determining whether permanent custody is in the best interest of the child:
 {¶ 11} "The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 12} "The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 13} "The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 14} "The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;"
 {¶ 15} Here, the social worker assigned to this case testified it would be harmful to the oldest child to permanently sever the parental relationship, but stated that in actuality, the foster home and the agency have been dealing with the issue during the time the child has been in foster care. The social worker further testified in her opinion, any harm would be outweighed by the benefits of adoption.
 {¶ 16} The trial court found, it is in the best interest of the children for them to be placed for adoption.
 {¶ 17} The record indicates JFS filed its case plan on March 2, 2000. The concerns identified were substance abuse by the mother's live-in boyfriend, inadequate parenting skills, domestic violence, and an inability to protect the children from the effects of domestic violence. The agency recommended the live-in boyfriend have a substance abuse evaluation at Quest and submit samples of his urine for chemical analysis. The agency also recommended both appellant and the live-in boyfriend to complete the Goodwill Parenting Skills Training Program. The agency recommended the boyfriend obtain an anger management evaluation at Melambrosia and that the mother have a physiological evaluation at Human Development. Later, the agency amended the case plan to have mother be evaluated at Quest and to obtain a psychiatric evaluation.
 {¶ 18} The record shows although there was no-contact order in place between appellant's boyfriend and the minor children, appellant was still living with him, and in fact brought his niece to a supervised visitation with the children. Appellant had attended counseling designed to assist victims of domestic violence, but was terminated for lack of progress. The mother completed Goodwill Parenting.
 {¶ 19} In all, JFS filed three different motions for permanent custody. The agency amended its first motion for permanent custody to a motion to extend temporary custody to allow appellant more time to work on the case reunification plan. The second motion for permanent custody was amended to a request for planned permanent living arrangements, because of the children's bond with their father. At the trial on the third motion for permanent custody, the case worker testified she had three contacts with appellant between October 10, 2001, and August 8, 2002. Appellant refused to give the case worker her address or phone number. The case worker testified that in her opinion, appellant had done nothing to mitigate the problems which led to removal of the children, had not contributed in any significant manner to the care or support of her children, and had made no progress in completing any aspect of the reunification plan. The case worker conceded that at least two of the children had bonded with their mother.
 {¶ 20} Appellant testified if given one more chance, she promised to do all the things required of her.
 {¶ 21} Our review of the record leads us to conclude the trial court did not commit error when it found by clear and convincing evidence that it was in the best interest of these three children to be placed in permanent custody of JFS and to terminate the mother's parental rights. Accordingly, the assignment of error is overruled.
 {¶ 22} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, of Stark County, Ohio, is affirmed.
By Gwin, P.J., Edwards, J., and Boggins, J., concur.
Topic: Juvenile permanent custody.